May it please the court, Jeff Tilden, Mark Willner and Dave Simmons for the appellant. I'd like to reserve three minutes of my time. If we could say only one thing to the court we would say this, the underwriters allocated underpriced IPO stock to their customers in return for an agreement that a substantial portion of the profits from the sale of that stock would be returned to them. We have alleged this conduct and if we can prove it, it is a run-of-the- mill, middle-of-the-road, garden variety 16b claim. But it doesn't comply with Delaware law does it in the sense of the demand letter? I don't agree with that your honor. Okay now tell me why what was alleged in the demand letter was quite different, quite generic, quite different than what you alleged in your more general your honor. I agree with that. And under the Delaware case law, at least as I look at it, you're kind of stuck with the facts and the theories that you submitted in the demand letter and that's kind of a condition precedent under Delaware law. Isn't that right? I don't believe so your honor. Certainly not with respect to the theories. The analysis of the demand letter under rule 23 or in a rule 23 framework cannot be applicable here for this reason. In the normal derivative case, the business judgment rule of the corporation is the or the business judgment of the corporation is the critical component of the analysis. The corporation is entitled to manage its own affairs. Coca-Cola has I believe 2 billion shares of stock and you cannot have 2 billion Coca-Cola shareholders buying for control. The corporation has the right to examine the merits, decide what the right thing to do is in its best interest and proceed or not proceed. None of that is the case here. None of it. By virtue of the statute, the appellant, the plaintiff is given the ball and allowed to run. The corporation has no ability to decide not to play, has no ability to alter the course. The only alternative the corporation is given is to take the ball from the plaintiff and run for them. That's that's assuming though again under Delaware law for a moment that you have given the corporation enough information to permit it to investigate what you're alleging, right? Surely. I assume that you would agree that that the the allegations that you make here are a little unusual for a 16b action. I mean they don't they're not run-of-the-mill in any way. They're more complex. Right. And that you have some issues that about, for example, the ownership issue. You're alleging that they own by virtue of the fact that these other people owe them an obligation and so on. These are unusual and in order for the corporation to be able to investigate that, wouldn't that have to have been stated pretty clearly in the demand letter in order to meet the requirements of Delaware law? I don't believe so, your honor, for this reason. First, the concept of group ownership is nothing new under 16b. Second, it is true that the trial court below saddled us with the obligation of producing a tremendous amount of context information. Exactly the point your honor makes. You can certainly envision circumstances where that would be fair and reasonable. We don't believe this was one of them. Our demand letter went to a group of underwriters who had been involved in an SEC investigation over this very conduct. It went to a group of underwriters who had been involved in a massive class action in the Second Circuit over this very conduct. It went to a group of underwriters who had been to the United States Supreme Court in Credit Suisse versus billing over this very conduct. They are playing a gotcha game here. There are oceans of material over this conduct, none of which is available to us. All of which they have. We sent letters that said, in context, we are asserting a 16b allegation over the things you have done for ten years or eight or whatever the number is. Seven. Is it the plaintiff's position, the appellant's position, that the information that was contained in these various other court cases to which you've made reference are in effect imputed to the corporation and that by virtue of the demand letter they are compelled to act as if they had all of it before them? No, sir. It's a rule of reason. But the demand letter and the words in it have to be viewed in context. In context of? Our claims and what they have spent the last... I guess what I'm trying to understand is this. As I read your demand letter, in isolation, if I were general counsel of these various entities and didn't know about these other entities or the other actions, I would not understand the claims that you've made in the demand letter to be the same ones that you later made in the complaint. Is that a fair statement? It's certainly the case that that's what the respondents claim today. Okay. So what I'm trying to understand is, is it your position that because these various entities were involved in substantial litigation in the Second Circuit, the Supreme Court, and so on, that any demand letter must properly be interpreted as being given in the milieu that they understood all these things? And in effect, it's almost like judicial notice. They're aware of these things and that when they read the demand letter, we have to impute to them that understanding. Again, it's a rule of reason. The demand letter has to be right in context of the facts. Here, our demand letters were not... What's the best case you have for that? I mean, it seems to me we've said that it's not just a technical requirement, that it has to be strictly enforced. I don't see any language in our cases or in Delaware law that says that you have to put it in context or it's a rule of reason analysis. Can you correct me on that? I grant you, Your Honor, there is no case on either side that with crystal and clarity outlines how the demand requirement in a 16b context should apply. It's got to be different, though, than the standard business judgment rule case. What do we know here? We know that 24 out of 54 of the issuers apparently had no problem with our demand. We know that VA Lennox, SourceForge, the one company whose stocks skyrocketed the most, gave our demand thoughtful, careful attention. We know that one company amended its merger documents to preserve its shareholders' claim in the case. We know that we wrote back to all of the complainers who, incidentally, all of the inquirers, who, incidentally, 24 out of 25 times sent form letters and explained, look, we are alleging the laddering, spinning conduct you're familiar with. How many of those people wrote back to us and said, we don't know what you mean? Zero. No one wrote back. They knew what we meant. In the event the court finds the demand inadequate, I think we should talk about demand futility. Because it is not a business judgment rule case, there is no second or third alternative open to the issuers. They do not have the right to examine the litigation and shut it down. They do not have the right to examine the litigation and take a different path. Their only alternative is to run with the ball, the play we have set in motion. Congress envisioned no method for the process termination of a 16B claim. So the question the court asks is, well, is there any evidence at all here, any evidence at all, from which we could conclude that they are serious about pursuing the claims that we have brought? What do we know? We know that zero out of 30 have changed their minds in the three years this litigation has been pending. We know that, astonishingly, the issuers, who are the beneficiaries of our recovery, moved on statute of limitations ground to have this claim dismissed with prejudice. What would prompt an issuer to do that? In light of the fact that step has been taken, is there any chance at all that they intend to take control of this litigation and run with it? Remember, the opportunity to exercise their business judgment conclude, you know, these guys are smart and they did a lot of work, but on balance, it's not in the best interest of the corporation. Is that the rule, though? I mean, you make a very good argument, logically, but what are we to rely upon, Mr. Tilden, to back that up? The fact that they don't respond and so on, is that, what are we to infer by that in terms of what our cases say or what the statutes or regulations say? That they didn't respond to the letters? They didn't respond. They haven't, to this day, adopted your position. If it were only a failure to respond to the letters, I'd argue, they would argue, and it would be true that the evidence is equivocal. They haven't failed to respond to the letters. They sat in Judge Robart's courtroom a few blocks north and asked that the claims be But, I mean, let's get back to your futility theory. The futility theory seems to me has to come at the time that the demand is made, not now. I mean, that's, and in fact, as you've indicated, it wasn't futile in all cases. So, I guess I don't understand the scope of your futility argument now. I mean, do you have a case that says that subsequent futility is operative? Corenby Snap-on Tools. In Corenby Snap-on Tools, the demand was made. A lawsuit was filed and the corporation looked at it and realized that the moving party, the plaintiffs, were exactly right. They went out and collected all of the money plus interest and then went into court and said, look, we're serious. If post-complaint conduct can be admissible for that purpose, it ought to be admissible for ours. But let's think first principle. I don't understand how that fits into futility, though. They went and said, look, our post-complaint conduct. I understand your point. I'm just saying. Let's back up because the... I mean, let's take it now. Let's assume there's no statute of limitations. Let's assume it's dismissed without prejudice and there's no other impediment that we require futility in the... to be shown in the first instance. You've indicated some of the companies have responded and might respond. So legally, how can we conclude that it would be futile for you to make a more specific demand letter to which the board of directors could respond? Your Honor, I'd say that the... that factual issue would be a mess, one that either side might prevail on, but for the fact that the remaining issuers have moved to dismiss the I have a question, though, about post-complaint conduct because in a standard business judgment rule 23.1 case, post-complaint conduct can't matter. Post-complaint conduct ought to be allowed to matter here in light of the fact that the only alternative they have is to take the claim and proceed with it. We're not investigating whether or not there is any other course open to the corporation. The only path, the only alternative they have if they want to foreclose the lawsuit is to say, you know, those people are exactly right and we are going to pursue this. Why in the world wouldn't post-complaint conduct be admissible on that point? I can't think of any reason. In the business judgment context, it interferes with all of the corporation's ability to govern its own affairs if you don't give them a chance initially to take a look at what's happened and form an independent view of what ought to occur. The Congress has said the corporation, the issuers, do not get to do that here. They have vested the decision to bring this claim with a plaintiff and we have made the decision. And the only issue now is, do they want to pursue it instead of us? We know for a fact they don't want to pursue it because they moved in this district to dismiss it with prejudice. We have your argument in hand. Do you want to say something for rebuttal? Yes. And we recognize you're not waiving any of your other arguments. Understood. Did I start with 15 minutes or with 12? You started with 15. I'd like to save some time for rebuttal. Thank you. Good morning. Andrew Klubach and Brent Bishop on behalf of the underwriters. Mr. Kistenbroker will speak on behalf of the issuers. May it please the court, the equitable tolling rule from Whitaker was designed to prevent those with, quote, from avoiding scrutiny by ignoring their disclosure obligations. It was not intended to give Section 16 plaintiffs an unlimited time to piece together a novel expansion of Section 16 to apply to publicly known facts. With respect, counsel, Whitaker analyzed the three competing theories of the Section 16B statute of limitations and came down squarely on the side that the disclosure interpretation is the correct construction of Section 16. In other words, a bright line rule. How do you get around that? Well, very interestingly, when Whitaker made that analysis, they acknowledged the law was very new. There were four cases at the time that had ever addressed that issue. Three cases in the Southern District of New York. What does that matter since it's the holding of our circuit? Well, sir, because three districts, they looked to the three district courts in the Southern District of New York that had found the disclosure rule and they said, in response to Judge Smith's question, this is a better approach than the Middle District of Pennsylvania. Since that time, the Second Circuit has clarified the rule that this court thought it was following. They thought they were following the Southern District. Why does that make any difference to us? I mean, I'm just speaking conceptually because we're bound by the decisions, rightly or wrongly, ill-reasoned or well-reasoned, by our former panels. So we can't sit here today and say Whitaker was incorrectly decided and that we're going to overrule it. Well, I think we're short about eight people. Yes, sir. And I'm not asking to overrule Whitaker. Actually, nine. Well, nine. More or less. That's a few judges, a few friends. Your Honor, my point was just to address why the Whitaker, why this court chose to follow the Southern District. No, I understand that. So let's get back to Judge Smith's question. We have Whitaker. What do we do with it? Right. And while you're answering that, we also have Roth v. Reeves, which is more recent by our court that reaffirms completely the holding in Whitaker. Not exactly. What Roth v. Reeves does is it finds a very important distinction. Roth v. Reeves was a situation where there had been a filing, but there had been alleged fraud committed in the filing where they had falsely claimed an exemption. This court said... Nonetheless, they did reaffirm Whitaker, did they not? They reaffirmed Whitaker in part, and they certainly said they were upholding the principles of Whitaker, but they were extending it to the newer development of the facts. I guess I get back to Judge Thomas's point, and that is that under Miller, we're a three-judge panel. We're stuck with what we have decided previously, and when you have Miller, I mean Whitaker, and Roth, do we have authority as a three-judge panel to distinguish those? Let's say you're right. I don't particularly like Whitaker. I think it's really kind of a poorly reasoned, but it's our case. It's the rule that we have to deal with, and Roth seems to confirm it. Wouldn't we have to have a three-judge, I mean an en banc panel over there? Because that argument could have made to the Roth court. Technically, the Roth court did not completely follow Whitaker, and this court could harmonize both Whitaker and Roth in this case. Here's how. In this case, there was disclosure, obviously public disclosure of the IPO, and in essence, an exemption was claimed. Every IPO carries with it an exemption. So the disclosure that occurred in this case was exactly the same kind of disclosure, public That is, there had been a transaction, but an exemption was claimed. In this case, there's an IPO and an exemption is claimed. This court can simply follow the Roth reasoning and say that to the extent you claim there's some sort of fraud in connection with that disclosure or that exemption that's been claimed is inappropriate or there are circumstances that should obviate that exemption, we will apply the two-year rule, and that's a way this court could absolutely harmonize Whitaker and Roth. How does that harmonize? I don't understand how it harmonizes with Whitaker. Well, because what Whitaker talks about, Whitaker talks about the likely way that outside shareholders are going to find out about the circumstances to bring their suit, and they say the likely way that outside shareholders will do so is through these Form 4 filings. Here, we know how the outside shareholders found out about their lawsuits. They found out about them because there was the IPOs that were publicly filed in all of these cases, which Pellon's counsel talks about. I mean, the Pellon's counsel said something that really should give this court pause when deciding whether to exercise its equity. He said, we are alleging the laddering, spinning conduct you're familiar with. From the beginning, what this case has been is to take the laddering, spinning conduct that every shareholder in this country has been very familiar with at that time, more than five years before they brought these lawsuits, and simply slap a Section 16B label on it. That's what Pellon's counsel said they were doing, and that justifies their vagueness in their demand letters, which my colleague is going to address. For this court to say that it should allow its equitable rule in Whittaker. Well, we're not talking about the equitable. We're asking you about whether if Whittaker means what we think it means, and if we're bound by Whittaker and the holding of Whittaker, are you just out on your claim? I think the answer is yes. I mean, you're inviting us to either distinguish it or somehow find a way to overrule it. But if we can't, then the district court was wrong. I would say clarify, Pellon's counsel would say distinguish, but yes. If you take the strict words of Whittaker out of context, from the principles behind them, and you say it's form for disclosure or nothing, then you would obviously have to distinguish it or clarify it. But that's not what the principles of Whittaker talk about. Whittaker was a case, of course, involving all inside insiders, and alleged disclosure that just amongst insiders that the plaintiff there was claiming should have been imputed to the outside shareholders. This court rightly said it's not fair to impute knowledge within the corporation to outside shareholders. But I guess what I'm in trouble with, I respect the fact you're trying to distinguish the factual underpinnings of both Whittaker and Roth. But the Whittaker court went to great length to analyze the purposes of 16B. And what was it all about? It considered and weighed all these things, and it came very clearly to this bright line rule. I don't see any exceptions in there. I mean, are you asking us to distinguish it on the basis that that was dicta in some way? Because if the facts are different, then it doesn't really matter what their reasoning was. I think that I think the court, the question about disclosure and whether or not the information that would be contained in Form 4 would likely to get to the outside shareholders, that principle this court can absolutely uphold under the facts of this case. If this court is stuck on the words Form 4, and whether that precise Form 4 was filed, even in circumstances like this where it would be impossible to file a Form 4, I mean, the kind of Form 4 that we're alleged to have missed filing would have been one that would have said, we're going to get some sort of future banking business as a result of the IPOs. If this court is forced, because of the strict words of Whitaker, to say it's Form 4 or nothing, then I can understand we may have a problem. Again, that's what Judge Thomas and I were kind of pushing the answer for us, is because, I mean, I've got to be candid with you. I don't agree with the reasoning of Whitaker. I wouldn't have decided it that way. But I wasn't on that panel. And we have it. It wasn't talked about, and you already knew this, and all that sort of thing. They went through it all, and they rejected it in favor of a bright line test. I don't see how you get around that, counsel. I mean, I understand the facts could be different, but when you have something that analyzes 16B so clearly, rightly or wrongly, and Roth that refers back to it, how do you get around it? Well, they also said from the starting point that they were in the world of looking at the fact that they're, because they did their analysis in a way that we don't necessarily agree with, we can ignore it. No, because they said that was a predicate for their ruling. They were talking about garden variety transactions. And that's why in the Roth court, where this exemption was claimed, even allegedly fraudulently, this court said, that doesn't matter. There was no disclosure in Form 4 of the alleged transaction that would have brought it outside the exemption. But this court said, that's okay. We are also, you also said you were going to balance this statutory language that says no suit shall be brought after two years. And of course here we have a whole other statutory scheme that's just as critical, and that is the statutory scheme that governs IPOs and protects capital formation in this country. And there is this strict exemption, because otherwise the absurd consequences that will result, the absurd consequences this court said would lead to if it's forced to take the rule, literally, as the Peltz have argued, is that in every single IPO, there is a lockup. It's a standard part of IPOs. So now every single IPO satisfies the group test under their field. I don't know anything about my background, but I did a lot of securities law. I understand what you're talking about. I agree Whitaker is absurd, but we're stuck with it. We're stuck with it. Don't we have to have an en banc hearing to overturn Whitaker, whether I would agree with it or not? I hope not. And I think because of the predicate that Whitaker was looking at, that it was a run-of-the-mill transaction as opposed to an unorthodox transaction, and because of the Roth, which specifically says you don't have to, when you're dealing with exemptions, identify the, what is alleged to be the fraud, because you're claiming an exemption. And here you have the IPO that clearly identifies the same information to be informed for and claims the exemption, because it's an IPO. This court does not have to, I believe, sit en banc, but if that's what it takes, that's what it will take. You've added about four minutes. And I'm going to turn it over to my partner. I will say we do have our alternative arguments, that they would fail to state a claim under Section B regardless, because they are merely repackaging all of the run-of-the-mill, as the Pwns Council candidly acknowledged, securities fraud claims, spinning, laddering, underpricing, all these claims that were brought under other Thank you, counsel. Always tough to be second. Yes, it is. May it please the court, David Kistenbroker on behalf of the moving issuers, I'm going to flip and address Whitaker just for one second. The Ninth Circuit itself did reaffirm Whitaker in the Roth case. In Roth, the Ninth Circuit gave itself the key to the ruling rule, as Roth suggests, would be inconsistent with the statutory scheme because it would effectively eliminate the two-year limitations period in any case that turned on the applicability of an exemption. And further quoting, we may not read 16b limitations period in a manner that would effectively nullify the limitations period whenever an insider engaged in an exempt transaction. The big bugaboo in Whitaker that came out of the district court of the insiders having knowledge of what Mr. Whitaker did and that being imputed to the corporation and screwing all the outside shareholders, that doesn't exist here. But the Roth discussion of why the report, if not filed, kicks in tolling, why tolling cannot be used to abuse circumstances just like this. So it's there for you in Roth. Honestly, I'm not seeing how that really helps you get around Roth. Indeed, it seems to reinforce Roth. I mean, Whitaker, excuse me. I don't see how it helps you. I mean, it's basically going back to the idea that we're not going to let all of the normal tolling analogies that be used here. We're going back to this bright line rule. And they seem to have affirmed Whitaker. Again, for capital formation purposes, for purposes of dealing with what I take to be in this case a new variety of class action to avoid some federal legislation, the reality is we're stuck with Whitaker. And I don't see how what you just said helps us get around that. That is what I do believe is the key in the Ninth Circuit. So you want us to carefully, maybe even prayerfully consider Roth, right? I think the language I just read is the key. Well, in the interim, let's turn to the letter. And in regard to the demands, it's very simple. The appellants cannot point to any law other than what we have pointed to on what controls the contours and content of a demand. It has to spring from state law. And in this case, it's Delaware because all the companies are Cayman. The United States Supreme Court, Judge Marshall writing a unanimous decision said that when there are gaps in the federal securities laws, they should be filled by state law, particularly in corporate law and corporate matters. Let's assume for a moment that we agree with you about the demand letter. And let's say that we're also stuck with Whitaker. Then what happens? I think below, because we did move on 12B1 grounds, it was dismissed without prejudice. The purpose of the demand is, even in 16B, for 60 days, to give the company the opportunity to initially be the first one to address the matter. So with respect to the, I don't remember how many it would be, it was the 24 that would survive if Whitaker controls, you'd still be back to the demand issue, right? I think that's the count. Okay. And from your perspective, you would triumph on that basis if not on the statute of limitations basis. Absolutely. Is that correct? Okay. Because the purpose of the demand in 16B was not fulfilled because they didn't, as the district court found, I believe, describe what their cause of action was in the letter. So there was a disenfranchisement. Thank you, counsel. Thank you. I believe I have a minute 42, or 32. I have a few things to say, but if the court has questions, I'll answer those instead. Go ahead. With respect to the demand, we will serve a new demand if we're obligated to, obviously. But a question we should ask is, what purpose would that serve here? With respect to Whitaker, the cases are articulated in the briefs, but let me make two points. The SEC has exclusive enforcement authority under 16A, get your forms filed. Shareholders have exclusive enforcement authority under 16B, bring the short summary. Counsel, what have other circuits done with respect to the 16B statute of limitation? The Second Circuit, all circuits other than the Second, I believe, adopt Whitaker. Second Circuit in Litzler and Morales adopted something, frankly, extraordinarily close to Whitaker. In Morales, the court said, and it quoted in Litzler, this has got to be as clear as two plus two, totally obvious. And what it was referring to by that- That's really the Whitaker concept of a bright line rule, right? Absolutely. And when you see what happened to Litzler when it went back to the trial court, there is not a peep of the statute of limitations ever again. And eventually, after full discovery, the defendants prevail on a summary judgment motion, but it's the end of the statute of limitations inquiry. Feathering out my last thought, though, there is no statute of limitations under 16A for the SEC's ability to go in and compel a form to be filed. In a Northern District, California case in 2009, SEC v. Mercury Interactive, they came in about a decade later and said, file your forms. We've got to ask ourselves, does it make any sense for the statute of limitations on the APB claim to run at a time when the SEC can still compel the information to be produced to the public? Let me ask you one other question. This may be impolitic, but I'll ask it anyway because it will help frame my consideration of it. It seems to me, we've seen a number of these cases now where the plaintiff's bar in securities actions has basically divided these up like you have done here. I'm not saying that's what you've done. I understand the issue. Does the fact that this is a substitute for an old class action have any bearing on what the parties had to do, what they had to understand when they got demand letters? Is their obligation changed? Is the context changed in any way? Let me answer that two ways. First, May 18 of 1980, a volcano exploded in this state and it caused a tremendous amount of property damage and it generated insurance claims. You send in your insurance claim in June of 1980 and you say the volcano exploded. Here's my claim. If they say, what won, does that get them review in the Ninth Circuit? I don't think so and we believe that's the issue here. You can certainly imagine a closer case where they genuinely don't know. I'd like to address an issue that I think lurks in your Honor's question and then I'll sit down. The question is whether we are a square peg in a round hole or not. The conducted issue here is the subject of a book by Jim Cramer. It's the subject of spectacular law review articles by Professors Loughran and Ritter that we cite. There was an effort by the SEC to do something about it, but they lacked the regulatory oomph. There was an effort in the IPO litigation in the Second Circuit to do something about it. The class was certified, then decertified, then settled for what the trial judge called – the word wasn't peanuts, but that's a synonym – a very measly recovery. There was an effort to use the antitrust rules to remedy the conduct. No success, the U.S. Supreme Court said. All of those were square pegs in a round hole. There is something here and it's real and it's bad and we are the only chance left to help make amends for it. Thank you, Counsel. The case that's heard will be submitted for decision.
judges: Hogan, Thomas, Smith M.